FINNEY *v.* CITY OF CROSWELL.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—INTENTIONAL AND WILLFUL MISCONDUCT—EVIDENCE.

In proceedings by parents against a city under the workmen's compensation act as amended by Act No. 173, Pub. Acts 1921, for the accidental death of an employee of a sewer contractor who was not subject to the provisions of said act, the finding of the department of labor and industry, that, under the circumstances as disclosed by the record, deceased was not guilty of intentional and willful misconduct, although he failed to move when warned to get out of the trench, *held*, justified by the record, and therefore binding, since the board is the trier of the facts.

2. SAME—SERVICES ON FATHER'S FARM TO BE CONSIDERED—PARTIAL DEPENDENTS.

Where deceased had worked on his father's farm without wages up to about two months before his death, the department properly considered the value of his services in determining the amount he contributed to the support of his dependent parents; the purpose of the act being to compensate for a loss.

3. SAME—DEPENDENCY OF PARENTS.

Evidence *held*, to justify the finding of the department of the dependency of the parents while deceased was working on the farm.

4. SAME—PARTIAL DEPENDENTS—BASIS OF COMPUTATION—"ANNUAL EARNINGS."

In determining the amount of compensation to be paid to partial dependents, the annual earnings under the rule of 3 Comp. Laws 1915, § 5435, being the actual earnings of deceased for the previous year, should be used rather than the earnings of the last few days under the rule of section 5441.

Certiorari to Department of Labor and Industry.

Submitted October 3, 1922.    (Docket No. 4.)    Decided December 5, 1922.

Simon Finney and another presented their claim for compensation against the city of Croswell and the State Accident Fund, insurer, for the accidental death of their son in defendant's employ.    From an order awarding compensation, all parties bring certiorari. Order vacated and remanded.

*Walsh & Walsh*, for plaintiffs.

*Roy Andrus*, for defendants.

CLARK, J.    Hiles Finney, 20 years of age, unmarried, living at home with his parents and a younger sister on a farm, was killed by a cave-in while trenching sewer pipe for John Pellow, a contractor with the city of Croswell for the work.    The contractor was not subject to the provisions of the workmen's compensation act at the time of the accident, hence the liability of the municipality and its insurer is under Act No. 173, Pub. Acts 1921.    The parents claimed compensation as dependents.    There was a finding of partial dependency and an award.    Both sides seek review on certiorari.

Several men were in the trench at the time.    Mr. Pellow observed a crack in the earth near the trench. He warned the men.    All got out but the deceased. Some ran probably 20 feet before the cave-in.    Deceased did not move.    Mr. Pellow testified:

"In the meantime I had been hollering to him to get out and he was looking up at me with a smile on his face.    *    *    *
"So, when he wouldn't move, the dirt gradually settled for a few inches and rolled over and when it rolled over he just squatted down in the ditch and took it.    The dirt did not cover him two inches from his ankles.    I don't think it covered him that much.    The

dirt was not over two inches over his ankles, what fell.

"*Q*. Did the dirt cover him?

"*A*. No, it struck him in here (indicating the side) when he squatted down in the ditch and then it all fell at his feet.

"*Q*. What injury did he receive?

"*A*. As far as I can understand it broke his ribs and punctured his lungs, that is what the doctor told me."

The deceased had worked but three and one-half days on this job. He had obeyed all orders theretofore given him by Mr. Pellow. His wage was $3 per day. For eight weeks just prior to this employment he had worked for the Michigan Sugar Company, Croswell plant, for which he received $119.53.

We quote from the finding of the department:

"In May, 1920, about 16 months before the accident, the applicants, the deceased, and a young sister moved onto a small farm in Sanilac county. The father was in ill health and unable to do anything but light work. Consequently, all of the heavy work about the farm fell upon the deceased. No wages were paid to the son but the parents purchased his clothes and allowed him about 50 cents per week spending money. This situation continued until about 2 months before the accident. In order to purchase some clothing and to pay off some indebtedness which the father had incurred, the son left the farm temporarily to work in town. He worked for the Michigan Sugar Company about 2 months and then worked for the respondent. * * * It was testified at the hearing that the minimum wage for farm hands in that locality was $40 per month and board for 8 months and $20 per month and board for the remaining 4 months of the year. In their briefs both parties use the actual earnings of the deceased for the 16 months prior to the death as the basis for their computation.

"In this they are in error. Section 11, part 2, of the act provides that the weekly wages shall be computed by multiplying the daily wage by 6 and the annual earnings shall be computed by multiplying the weekly wages by 52. As the daily wages of the deceased were $3, the annual earnings would be $936.

During the year previous to his death the applicant worked 4 winter months at home and 6 other months. In addition, he worked about 2 months for the sugar company. Thus, he contributed to his parents $80 for the 4 winter months; $240 for the 6 other months and $25 which he contributed while working for the sugar company. During that year his parents gave him $20 spending money and $15 for clothes. In addition they boarded him during the 2 months which he worked for the sugar company. This was valued at $2.50 per week. Thus, he made a net contribution of $290 during the year preceding his death. As his weekly wages were $18 and his annual earnings were $936 and he contributed $290 the parents would be entitled to $3.35 per week as partial dependents."

1. It is said that the death was due to deceased's intentional and willful misconduct. 2 Comp. Laws 1915, § 5432. The department found otherwise. The boy is not shown to have had experience in the work. Why he did not act quickly in the emergency and upon warning is not known. It might be inferred from his conduct and his smiling response to Mr. Pellow and his former obedience that he did not understand. Under the facts, and in the absence of any knowledge of what was passing in his mind, the finding of the department must stand, as it is the trier of the facts. *Staal* v. *Railroad Co.*, 57 Mich. 239; *Clem* v. *Chalmers Motor Co.*, 178 Mich. 340 (L. R. A. 1916A, 352); *Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168 (L. R. A. 1916A, 22, Ann. Cas. 1916A, 386); *Freeman* v. *Railroad Co.*, 191 Mich. 529.

2. It is urged that:

"The value of the son's services and his expenses, when working on his father's farm under no definite contract of hire, should not be taken into consideration in determining the question of dependency."

We think that the department was right in considering the value of the deceased's services on the

farm. They were contributed, as was a part of his earnings while in the employ of others. They must be considered if the loss of the dependents is to be compensated. It was held in *Moll* v. *City Bakery*, 199 Mich. 670, quoting from syllabus:

"The principle underlying the workmen's compensation act is that it was adopted to compensate for a loss, and that the loss in every case must be determined by the facts in that particular case."

Our statute so far as material here provides:

"If the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury, the weekly compensation to be paid, as aforesaid, shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employees to such partial dependents bears to the annual earnings of the deceased at the time of his injury." * * * 2 Comp. Laws 1915, § 5435.

Under an act limiting liability to loss of earnings and saying nothing about services, it was held in the house of lords in *Tamworth Colliery Co., Ltd.*, v. *Hall*, 4 B. W. C. C. 313, quoting from syllabus:

"An infant workman earned 6s. 11d. per week, which he paid to his father to assist in maintaining the family. He helped his father, who worked as a barber, and his services in this were worth 6s. per week. He was killed by an accident, and his father applied for compensation as a partial dependent.
"*Held*, that in determining the question of fact as to the father's dependency on the son, the county court judge should consider both the cost of the maintenance of the son, and the value to the father of the son's services in the barber's business."

A similar case, involving like services on a farm, was before the Connecticut commission (*Belcher* v. *Campo*, 1 Conn. Comp. Dec. 612), and compensation was allowed, of which see note 13 N. C. C. A. 322.

And there was a like holding in *Geo. A. Lowe Co.* v. *Industrial Commission,* 56 Utah, 519 (190 Pac. 934), of which see note 13 A. L. R. 697.

3. It is also claimed that the farm account showed no dependency in fact. We will not discuss the account. It is sufficient to say that the evidence justifies the finding of the department.

4. Plaintiffs complain of the method used by the department to determine annual earnings. The complaint is meritorious. The correct method for this case was that used by the department and approved by this court in *Kostamo* v. *Christman Co.,* 214 Mich. 652, and again fully set forth in *LaLonde* v. *Jennison Hardware Co.,* 219 Mich. 194. The department determined compensation by simple proportion, compensation: $10.80 (60% of average weekly wage) :: $290 (contributions) : $936 (annual earnings) and found compensation to be $3.35 per week. But annual earnings were determined by the rule of section 5441, 2 Comp. Laws 1915. Deceased's total earnings as shown by the record for the year were, farm work $320, sugar factory $119.53, trenching $10.50, a total of $450.03. Had the rule of the cases above cited, respecting section 5435, 2 Comp. Laws 1915, been followed, the problem in simple proportion would have been, compensation: $10.80 :: $290 : $450.03, and compensation therefore would have been $6.96 per week.

The award is vacated and the case remanded for further proceedings not inconsistent herewith. Plaintiffs will recover their costs.

FELLOWS, C. J., and WIEST, MCDONALD, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.