## MIKE KRIVICH v. BUTLER BROTHERS AND ANOTHER.[1]

April 26, 1929.

No. 27,288.

*Farnand & Galob*, for relator.

*J. M. Sweitzer* and *Denegre, McDermott, Stearns, Stone & Mackey*, for respondent employer and Employers Mutual Liability Insurance Company, its insurer.

DIBELL, J.

Certiorari on the relation of Mike Krivich to review the order of the industrial commission denying him compensation for the death of his brother, John Krivich.

On May 24, 1928, John Krivich, who was in the employ of the defendant Butler Brothers on the iron range at Carson Lake, sustained an accidental injury which arose out of and in the course of his employment and which resulted in his death two days later. He was a bachelor. The only one claiming to be a dependent was

[1]Reported in 225 N. W. 117.

his brother, Mike Krivich. He was not an actual dependent under G. S. 1923 (1 Mason, 1927) § 4275(3). No legal obligation to give support rested upon the decedent. Under the statute, to be entitled to compensation as a partial dependent the plaintiff must have "regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto." G. S. 1923 (1 Mason, 1927) § 4275(3)(4).

The testimony of Mike Krivich was subject to many imperfections of a character that justified the commission in disregarding much of it. He had himself received an injury in 1927 while in the employ of the Oliver Mining Company and received compensation for a temporary disability, but long prior to the injury to John his payments under the compensation act had ceased. The only importance of Mike's injury results from his claim that he was disabled, and therefore it was natural that his brother help him. His testimony as to what he earned himself was not true. He did not understand English well, and this fact may explain some of the contradictions in his testimony. John at various times, so the testimony shows, gave him money. Some of the plaintiff's testimony as to the amount was not true. John and others boarded with him on a co-operative plan, all participating in the payment of grocery bills, and paying in addition for their rooms. John was fond of Mike's children and bought them clothing. From March 1, 1927, until March 1, 1928, John paid Mike's dues amounting to about $4 per month in a Slovenian society having insurance and benefit features. Afterwards Mike paid the society. Whatever John paid, except the payment of the society dues, was irregular. The payment of dues stopped more than two months before John's death. From March 20, 1928, until John's death Mike worked for the township with substantial regularity at $5 per day. The evidence did not require the commission to find that Mike "regularly derived part of his support from the wages" of his brother at the time of his death and for a reasonable period of time immediately prior thereto.

Illustrative cases are Bartkey v. Sanitary Farm Dairies, 170 Minn. 159, 212 N. W. 175; Gossen v. Township of Borgholm, 174 Minn.

334

.227, 218 N. W. 882; Bengston v. Siems, 173 Minn. 498, 217 N. W. 679; Pushor v. American Ry. Exp. Co. 149 Minn. 308, 183 N. W. 839; State ex rel. Fleckenstein Brg. Co. v. District Court, 134 Minn. 324, 159 N. W. 755.

Order affirmed.

STONE, J. took no part.